LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellant, *v.* JOHN T. KEEFE *et al.,* Defendants-Appellees.

Second District    Nos. 77-96, 77-97 cons.

Opinion filed October 18, 1977.

Julius Abler, of Libertyville, for appellant.

Joshua Sachs, of Glencoe, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

These are two separate forcible entry and detainer suits involving the same parties and the same property but having different issues. The records are not clear but at least without objection they were tried consecutively before the same jury, argued together and submitted together, with separate verdicts given to the jury as to each case. Separate appeals have been filed as to each case. Although not raised in the briefs or argument, the question this court has is whether the procedure followed in the trial court was proper. Not surprisingly, we have consolidated these two cases for this opinion for reasons which will be apparent.

The facts leading up to and applicable to the two suits are the same. On February 29, 1972, Edison Dick, as lessor, and John T. Keefe, as lessee, executed a lease for a term of 8 years commencing on May 1, 1972. The premises are known as the Adlai Stevenson farm in Mettawa, Illinois, and the rental was set at $850 per month, payable in advance. On May 31, 1974, Edison Dick donated and conveyed the farm to the plaintiff, Lake County Forest Preserve District. Also on that date the lease was assigned to the District, including any past due rent. At this point the facts and issues presented in the two cases diverge.

The first case, which we will refer to as the 1974 suit, apparently had its origin when the district served Keefe with a 10 day notice to quit the premises on August 14, 1974. The notice recited that Keefe had not paid rent for the months of December 1973 and January through July 1974. On August 19, 1974, Keefe tendered a $2550 check to the district as rent for the months of June, July and August 1974. This tender was refused. On August 30, 1974, the district filed a forcible entry and detainer suit for possession and rent due and owing in the amount of $7650 for the nine

months of December 1973 through and including August 1974. While the exact amount alleged to be due is difficult to determine from the record, in final argument as to the 1974 suit the attorney for the district stated to the jury that they were seeking 13 months' rent at $850 per month. It appears that this included the four-month period from the date of filing this suit to January 1, 1975. The 1974 suit did seek a "monthly rental of $850 during the pendency of this action."

In the 1974 suit the defendant filed an amended counterclaim totalling $6780. In that part of the district's statement to the court, out of the presence of the jury, relative to the counterclaim, the district conceded that Keefe was entitled to a setoff of three of the items listed in the counterclaim. We cannot determine which three of the four items counsel referred to. There were five items in the counterclaim, including one item of $5000 for groundskeeping which the district did not concede.

■■ The jury returned a verdict for Keefe, finding no rent due. The jury also returned a verdict in favor of the District as to the Keefe counterclaim. This is an impossibility. In his counterclaim Keefe conceded that he owed 25 months rent at $850 per month from the inception of the lease until May 31, 1974, the date of the assignment of the lease from Edison Dick to the District but that he had only paid 19 months, or $16,150. The only factual basis upon which the jury could determine that no rent was due is the amount claimed in the counterclaim. However, the jury, by its verdict on the counterclaim, set this amount at zero. These verdicts are, therefore, inconsistent and against the manifest weight of the evidence.

We turn then to the 1976 suit. On May 19, 1976, the district filed its second forcible entry and detainer action, alleging that Keefe had not paid the May 1976 rent in the sum of $650. We note, parenthetically, that the parties apparently agreed to reduced rental payments of $650 per month commencing on January 1, 1975. The proofs offered in the 1976 suit indicate that rent payments at the reduced rate were made and accepted up to and including April 1976. On June 7, 1976, Keefe answered and stated that he was entitled to $2200 credit starting May 1 for redecorating, pursuant to paragraph 23 of the lease. As stated above, this suit was heard immediately following the 1974 suit with counsel arguing both cases prior to the jury retiring to ascertain its verdicts.

Paragraph 23 of the lease reads as follows:

"Lessor agrees to allow Lessee a credit against rent in the amount of $2200.00 for decorating the residence at the inception of this Lease and the same credit in the fifth year of this Lease if Lessee redecorates the residence at that time. Lessor shall paint the exterior of all buildings in the fifth year of this Lease."

■■■ The lessee, Keefe, notified the District that he was not going to pay rent for May, June or July 1976 and would pay only $400 on August 1, 1976. The three months' rent at $650 per month and the sum of $250 subtracted from the August rent totalled the $2200 in question. The evidence indicated that some paneling and plumbing work had been completed. In addition, some preparations had been made for painting the interior but that painting had not been performed at the time of the trial herein, in August 1976. The first question thus raised is when the credit for the redecorating should be allowed, prior to, during or after the completion of each facet of redecoration. The trial court submitted the interpretation of paragraph 23 of the lease to the jury and it returned a general verdict for Keefe, finding no rent due. We find this to be error. Reasonable men could not disagree that the provision in question here had but one meaning. If redecorating work were performed during the fifth year of the lease the lessee would receive credits for sums actually expended or work performed, up to a maximum of $2200. The making of expenditures or performance of redecorating work were clearly conditions precedent to the accrual of the rent credit and the trial court should have so instructed the jury. The only issue of fact to be determined in this matter is what work, if any, actually performed by the defendant in the fifth year of the lease constituted redecorating within the meaning of the lease. This is the issue which should be submitted to the jury in the next trial of the 1976 suit.

The record herein is replete with inconsistencies. The confusion is multipled by submitting both cases to the jury at the same time. This court is not able to determine with any real degree of accuracy what the details of the 1974 suit were. We have spent a great deal of time trying to conform the pleadings to the proof, with little success. To say the least, if this court is confused the jury must have been doubly so, as evidenced by their three verdicts which, in substance, washed their hands of the whole proceeding.

■■ Finally, we believe it necessary to comment on the procedure employed in the trial of these two cases. Section 51 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 51), provides in pertinent part:

> "* * * actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right."

The courts of Illinois clearly favor consolidation of causes where the same can be done as a matter of judicial economy.

In *Vitale v. Dorgan* (1975), 25 Ill. App. 3d 941, 944, 323 N.E.2d 616, 618, this court explained:

> "Consolidation may take one of three forms: (1) where several

cases are pending involving substantially the same subject matter, the court may stay proceedings in all but one, the decision in the others being determined by that reached in one trial, thereby avoiding multiple trials on the same issue; (2) where several cases involve an inquiry into the same event in its general aspects, the cases may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending which might have been the subject of a single proceeding, the cases, by consolidation, become merged into one in which the rights of the parties are determined. (Actions consolidated in the latter manner lose their independent identity and are disposed of as one suit.) [Citations.]"

It is clear that what was done with these two cases in the trial court is neither the first nor third form of consolidation. In form, at least, the procedure below resembles the second form of consolidation in that there were separate verdicts and judgments entered in the 1974 and 1976 cases. With regard to the proper circumstances for consolidation in such cases, it is also established that,

"Consolidation of separate causes for trial is discretionary with the trial court and where separate causes are of the same nature, arise from the same act or event, involve the same or like issues and depend largely upon the same evidence, consolidation is not an abuse of discretion. [Citations.]" *Stone v. City of Belvidere* (1976), 39 Ill. App. 3d 829, 833, 350 N.E.2d 526, 529.

In *Vitale v. Dorgan* this court approved the consolidation of the two forcible entry and detainer actions. We stated therein, "Each case consisted of the same single issue, that being the determination of the party entitled to possession." (25 Ill. App. 3d 941, 944, 323 N.E.2d 616, 618.) In the cases before us, as we stated above, we have the same parties and the same property but we do not have the same issues. By the time of trial possession was no longer an issue in the 1974 case because subsequent to that time rent was paid and accepted by the lessor. The sole remaining question was the amount of rent due and owing for 1973 and 1974. The 1976 case involved both possession and whether rent was due, based on separate terms of the lease, for the month of May 1976. As quite clearly shown by the records herein, the evidence in these two actions was entirely separate.

We find that whether the two cases were tried together by agreement of counsel (and this does not appear of record), or by the discretion of the trial court, the procedure was in error. The trying consecutively of two causes of action and then having one jury bring in separate verdicts as to the two distinct suits is not a consolidation and, in any event, this was not a

proper instance for consolidation. We therefore reverse the findings and judgments in both cases herein and remand with instructions to try the two cases separately.

Reversed and remanded with instructions.

WOODWARD and BOYLE, JJ., concur.